UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Travis Price, | Case No. 0:21-cv-02686-TLW |
| PLAINTIFF, | |
| v. | **Order** |
| City of Rock Hill and Ralph Norman, | |
| DEFENDANTS. | |

# I. Factual and Procedural History

Travis Price ("Plaintiff" or "Price") originally filed this action in the York County Court of Common Pleas on July 19, 2021. The case was removed to this Court on August 20, 2021. Plaintiff asserts claims against the City of Rock Hill ("City") and one claim for defamation against Congressman Ralph Norman, United States Representative for the 5th Congressional District of South Carolina ("Representative Norman"). *See* ECF No. 24 ¶¶ 149-175.

By way of background, Plaintiff's operative amended complaint was filed on October 21, 2021, and on November 19, 2021, Representative Norman filed a motion to dismiss arguing Plaintiff's claim is barred by the doctrine of sovereign immunity because he failed to first exhaust his administrative remedies. ECF Nos. 24, 33. On March 16, 2022, United States Magistrate Judge Shiva V. Hodges issued a report and recommendation, recommending this Court deny Representative Norman's motion to dismiss. ECF No. 39 at 14. The Court adopted the Report, ECF No. 39, and directed the parties to proceed with a certification from the Attorney General as outlined in

1

28 U.S.C. § 2679 and 28 C.F.R. § 15.3. *See* ECF No. 45 at 3. On June 9, 2022, the Director of the Torts Branch, Civil Division, United States Department of Justice, certified that Representative Norman was acting within the scope of his office as a Member of Congress at the time of the alleged conduct. ECF No. 49-2.

This matter is back before the Court on the United States' motion to substitute and dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(1) where the United States certifies that Representative Norman was acting within the scope of his employment when he issued the allegedly-defamatory statements at issue, additionally arguing that Plaintiff's claim must be dismissed against the United States for failure to exhaust his administrative remedies pursuant to the Federal Tort Claims Act ("FTCA"). ECF No. 49-1 at 1.

Presently before the Court is the Report and Recommendation ("Report") filed by United States Magistrate Judge Shiva V. Hodges. ECF Nos. 49, 54. In the Report, the Magistrate Judge recommended that the Court grant the United States' motion to substitute and dismiss. Plaintiff filed objections to the Magistrate Judge's Report on July 27, 2022. ECF No. 55. The Government filed a reply brief to Plaintiff's objections. ECF No. 56. This matter is now ripe for review.

## II. Standard of Review

The Court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's Report and Recommendation to which a specific objection is registered, and may accept, reject, or modify, in whole or in part, the

recommendations contained in that report. 28 U.S.C. § 636. In conducting its review, the Court applies the following standard:

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections.... The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

*Wallace v. Housing Auth. of the City of Columbia*, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

In light of the standard set forth in *Wallace*, the Court has carefully reviewed the report, the objections, and all relevant filings—including the cited cases and statutes. Specifically, the Court, in addition to carefully reviewing the Report and Recommendation, carefully reviewed the objections to the Report, the reply to the objections, and the memoranda filed by both parties in connection with the motion to substitute and dismiss. The Court also reviewed the existing caselaw that addresses the issues of both certification and administrative tort claims.

## III. Discussion

### A. United States' Motion to Substitute

First, the Court will address the United States' motion to substitute. The Government argues the Court should substitute the United States as a defendant for

Representative Norman. The Government points to a Westfall Act Certification issued by the Director of the Torts Branch of the Civil Division of the United States Department of Justice. The certification, which is included as an exhibit in the Government's Motion to Substitute and Dismiss, ECF No. 49-2, states in part that "Defendant Ralph Norman was acting within the scope of his office as a Member of Congress at the time of the alleged conduct."[1] The Government argues that "the Westfall Act accordingly requires the substitution of the United States as Defendant in this action."

Price argues that the United States' motion to substitute should be denied because he challenges the certification and is entitled to conduct limited discovery and seeks an evidentiary hearing on the issue. Price argues "limited discovery is permitted in a Westfall Act case where a plaintiff alleges sufficient facts that, if taken as true, would establish that the defendant's actions exceeded his scope of employment." ECF No. 52 at 6 (citing *Wuterich v. Murtha*, 562 F.3d 375 (D.C. Cir. 2009)). Specifically, Price argues that the following facts justify allowing him to conduct limited discovery on the scope of employment issue—(1) that Price expressly pled that Representative Norman was being sued in his individual capacity, rather than in his official capacity as a Member of Congress, (2) that Representative Norman "added false allegations to his original social media post that were not included in the City's official statement" and (3) that Representative Norman did not remove negative references to Price after the City's retraction of its official statement. ECF

---

[1] The Certification, ECF No. 49-1, is issued pursuant to 28 U.S.C. § 2679 AND 28 C.F.R. § 15.4 by the Director of the Torts Branch, Civil Division, United States Department of Justice.

No. 52 at 7.

The Magistrate Judge states in her Report, "the FTCA is the exclusive remedy for 'personal injury . . . arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" 28 U.S.C. § 2679(b); ECF No. 54 at 4. As amended by the Federal Employees Liability Reform Act and Tort Compensation Act of 1988 ("Westfall Act"), the FTCA provides a mechanism for the United States to substitute itself as defendant for employees sued in legal actions. Once the Attorney General certifies that the defendant federal officer was acting within the scope of his office at the relevant time, the statute itself provides that the United States "shall" be substituted as the sole defendant in the action. Moreover, the Supreme Court has explained, "[w]hen a federal employee is sued for wrongful or negligent conduct, the [Westfall] Act empowers the Attorney General to certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose.'" *Osborn v. Haley*, 549 U.S. 225, 229–30 (2007) (quoting 28 U.S.C. § 2679(d)(2)). The Supreme Court has ruled that "[this] statute is fairly constructed to allow [plaintiffs] to present to the District Court their objections to the Attorney General's scope-of-employment certification." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 436–37 (1995).

Next, the Magistrate Judge lays out that "the scope-of-employment certification is prima facie evidence that the defendant employee acted within the scope of his employment, thereby placing the burden on the plaintiff to prove

otherwise." ECF No. 54 at 5 (citations omitted). Plaintiff must present "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision, not mere conclusory allegations and speculation." *Id.* "At all stages of the process, it is for the district court to weigh the sufficiency of the evidence, to determine whether genuine issues of fact exist, and ultimately to resolve these factual issues . . . to determine whether the certification should stand." *Borneman v. United States*, 213 F.3d 819, 827 (4th Cir. 2000). The Magistrate Judge concludes that in making this determination, "courts should apply 'the law of the state in which the tort occurred'" and that "South Carolina law recognizes that '[a] principal may be held liable for defamatory statements made by a servant acting within the scope of his employment or within the scope of his apparent authority.'" ECF No. 54 at 6–7 (citing *Abofreka v. Alston Tobacco Co.*, 341 S.E.2d 622, 625 (S.C. 1986)). The Magistrate Judge applied this standard in concluding that Representative Norman was communicating with his constituents about a matter of public concern in his official capacity as a Member of Congress. She recommends that the District Court grant the United States' motion to substitute it as a defendant in this action.

Federal courts have repeatedly recognized that Members of Congress are acting in their official capacity when they "broadcast their views on pending legislation and related current events through press releases, televised speeches, interviews, and, as in the present case, through social media postings." *Does 1-10 v. Haaland*, 973 f.3d 591, 600 (6th Cir. 2020), *cert. denied sub nom. Does v. Haaland*, 209 L. Ed. 2d 529, 141 S. Ct. 2466 (2021). In *Haaland*, high school students brought

a libel action against two members of Congress, U.S. Representative Debra Haaland and U.S. Senator Elizabeth Warren, based on a series of statements made by Representative Haaland and Senator Warren on Twitter in response to a widely publicized incident involving students and a Native American activist on the National Mall. In that case, the district court found plaintiffs' defamation claims were barred by sovereign immunity, and the 6th Circuit affirmed. The Court stated: (i) Members of Congress are government employees for purpose of the FTCA (ii) the statements made were in furtherance of the defendants' employer, (iii) served the interests of constituents, were views regarding topical issues and related legislation and, (iv) the statements were made in the course of employment. Senator Warren and Representative Haaland were dismissed from the suit.

This Court also finds *Council on Am. Islamic Rels v. Ballenger,* 444 F.3d 659 (D.C. Cir. 2006) instructive. There, a Member of Congress made allegedly defamatory comments about the Council on American-Islamic Relations, referring to them as a "fund-raising arm for Hezbollah," during a telephone interview related to his pending divorce. *Id.* at 662. The D.C. Circuit explained that "the appropriate question, then, is whether that telephone conversation—not the allegedly defamatory sentence—was the kind of conduct [the Congressman] was employed to perform." *Id.* at 664. Looking at the entire phone interview, the D.C. Circuit found that it was an action within the scope of the Congressman's duties and the "allegedly defamatory statement was incidental to the kind of conduct he was employed to perform." *Id.* at 664–65.

This Court also notes the case *Operation Rescue Nat. v. United States*, 975 F.

Supp. 92 (D. Mass. 1997), *aff'd*, 147 F.3d 68 (1st Cir. 1998). In that case, Senator Edward M. Kennedy stated "Operation Rescue . . . has as a matter of national policy firebombing and even murder." *Id.* at 94–95. The plaintiff sought damages asserting a defamation claim. The Court found the remarks were made by Senator Kennedy within the scope of employment to inform the public of reasons for his position on pending legislation and that the statements were part of the Senator's duties. The Court stated, "the Westfall Act provides Senator Kennedy immunity for his remarks regarding Operation Rescue[.]" *Id.* at 96. This case has application here.

Statements issued on a Member of Congress's official social media accounts "fit within the wide range of legitimate errands performed for constituents, which includes preparing so called 'newsletters' to constituents, news releases, and speeches delivered outside the Congress." *Haaland*, 973 F.3d at 602 (*quoting United States v. Brewster*, 408 U.S. 501, 512 (1972)) (internal quotation marks omitted). Social media platforms are the "modern public square," *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017), and accordingly, "[t]here is no meaningful difference between [social media posts] and the other kinds of public communications between an elected official and their constituents that have been held to be within the scope-of-employment" of a Member of Congress. *Haaland*, 973 F.3d at 602.

The District Court finds the analysis set forth by the Magistrate Judge in the Report regarding the Government's Motion to Substitute persuasive. In her Report, the Magistrate Judge concludes, citing relevant caselaw, that Price has "failed to carry his burden to show an issue of material fact concerning whether Norman was

8

acting within the scope of his employment when he issued the allegedly-defamatory statements" on two separate grounds. ECF No. 54 at 8. First, the Magistrate Judge concludes that "Plaintiff does not cite, nor is the court aware of case law indicating that because Plaintiff sued Norman in his individual, as opposed to official, capacity, this captioning bears upon whether Norman's actions exceeded the scope of his employment." *Id*. Second, the Magistrate Judge concludes that Plaintiff's allegation that Representative Norman made knowingly-false statements is insufficient to warrant discovery. "Even if true, the correct inquiry is not the wrongfulness of the conduct, but the type of act at issue that is dispositive . . . a Congressman speaking to his constituents about a matter of public concern." *Id*.

Price filed objections to the Report, ECF No. 55. First, he disagrees with the Report's conclusion that existing caselaw holds that Members of Congress act within the course and scope of their office when communicating with constituents via social media on matters of public concern. *Id*. at 1. Second, Price restates that he is entitled to conduct limited discovery on the issue "of whether Defendant Norman was in the course and scope of his employment and whether the Westfall Certification is correct." *Id*.

Notably, Price does not object to the Magistrate Judge's conclusion that Representative Norman's social media posts were about a matter of public concern. ECF No. 54 at 2-3. Moreover, Price's objections do not cite any specific caselaw arguing the contrary, nor do the objections refute the expansive body of caselaw cited by the Government in its briefs or the litany of cases set forth by the Magistrate Judge

in her analysis.

In coming to its conclusion, the Court relies on the facts alleged in the Amended Complaint. This complaint asserts that, on June 23, the City of Rock Hill distributed an official statement addressing the "Arrest of Ricky Roderick Price and Travis Price." Am. Compl. ¶¶ 40-41. The statement indicated Price was not compliant with law enforcement during the interaction with officers at the gas station, "yelling belligerently," "us[ing] his body to bump the Officers backward," and "shov[ing] Officers." Am. Compl. ¶ 42.  Representative Norman, who represents Rock Hill and the surrounding communities in Congress, posted a written statement on his official "Rep. Ralph Norman" Facebook page the next day. *See* Am. Compl. ¶¶ 73-74. The Amended Complaint states that Representative Norman "specifically adopted and referenced … [the] City's official written and publicly disseminated Memorandum and statements" in his post. Am. Compl. ¶ 94. The Amended Complaint asserts that the Facebook post incorrectly referred to Mr. Price as a "suspect" and indicated that he had "interfere[d] with things" and was "non-compliant" with police officers. *Id*. Furthermore, in the post Representative Norman discussed the protests that occurred following the incident, thanked law enforcement, and expressed support for the law enforcement community. *Id*. The Amended Complaint includes thirteen counts, one of which is against both Representative Norman and the City of Rock Hill, see Am. Compl. ¶¶ 149-75, while the remaining twelve counts are brought only against the City.

The core issue before the Court is whether Representative Norman acted

within his official capacity. This Court has reviewed the pleadings and briefings in detail, and finds that the Amended Complaint makes clear that Price has sued Representative Norman "based on acts or omissions within the scope of [his] federal office[]." *Keyter v. McCain*, 207 F. App'x 801, 802 (9th Cir. 2006) (rejecting argument that plaintiff sued federal official defendants in their personal capacities when allegations in the complaint indicated otherwise). Regardless of how Plaintiff may label Representative Norman's capacity, the FTCA precludes personal capacity actions by providing the "exclusive" remedy for tort claims that may arise from official actions by federal employees. *See* 28 U.S.C. 2679. "Personal capacity suits against employees are not cognizable under the FTCA." *Terrell v. United States*, No. 08-cv-2228, 2009 WL 2762516, at *4 (D.S.C. Aug. 27, 2009). Therefore, in accordance with the body of caselaw, and based on the assertions in the record, this Court finds that Representative Norman acted within the scope of his office. The posted statement regarding the plaintiff's arrest was a matter of public concern, made by an employee of the government about a matter of public concern. It was posted on Representative Norman's Facebook page.

Thus, this Court concludes that the Magistrate Judge correctly applied the law to the allegations in Plaintiff's Amended Complaint in recommending that the United States be substituted for Representative Norman based on the allegations in the record. As discovery would not change this conclusion, Plaintiff's request for limited discovery is denied.

### B. United States' Motion to Dismiss

The Government argues that the Court should dismiss Plaintiff's FTCA claim because he has not exhausted his administrative remedies. In the alternative, the Government argues Plaintiff's FTCA claim should be dismissed because the FTCA's limited waiver of sovereign immunity is subject to numerous exceptions. One specific, and important, exception under the FTCA including one that preserves the government's immunity from suit for "[a]ny claim arising out of assault, battery, false imprisonment, false imprisonment, false arrest, malicious prosecution, abuse of process, *libel*, *slander*, misrepresentation, deceit, or interference with contract rights." *See* 28 U.S.C. § 2680(h) (emphasis added).  Notably, this exception to liability protects "an employee of the Government" from liability based on a claim "arising out of . . . libel [or] slander," which is the focus of the claim brought by Plaintiff.

As the Magistrate Judge states in the Report, "Plaintiff responds only that he has not had the opportunity to exhaust his administrative remedies, in that he brought suit against Norman, not the United States, and '[i]f the Court is inclined to grant United States' Motion to Substitute, Plaintiff requests that the Court allow Plaintiff the appropriate time to comply with 28 § U.S.C. 2675, to the extent he is required to do so.'" ECF Nos. 52 at 8; 54 at 11. Plaintiff essentially concedes that he did not pursue the administrative remedy.

In the Report, the Magistrate Judge concludes that Plaintiff has not carried his burden to prove this court has jurisdiction, warranting dismissal of his FTCA claim pursuant to Fed. R. Civ. P. 12(b)(1) on grounds that Plaintiff has failed to

exhaust his administrative remedies. Accordingly, the Magistrate Judge recommends this Court grant the Untied States' motion to dismiss, dismissing Plaintiff's FTCA claim without prejudice to refile, if he so choses, following exhaustion of his administrative remedies. ECF No. 54 at 11.

A motion to dismiss for lack of subject matter jurisdiction raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 (2006). When a defendant makes a facial challenge to subject matter jurisdiction, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

The Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., provides individuals injured by the tortious acts of federal government employees with an avenue to seek compensation from the federal government where they otherwise would be barred by sovereign immunity.

As held by the Supreme Court:

Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Sovereign immunity is jurisdictional in nature. Indeed, the "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit."

*F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted). The FTCA contains a limited waiver of sovereign immunity, subject to numerous exceptions. *See* 28 U.S.C. § 2680 (listing exceptions). To advance a tort claim against the United States, a plaintiff must establish that he complied with the administrative presentment requirements of the FTCA, 28 U.S.C. § 2675, and bears the burden of establishing that an exception to the FTCA's limited waiver of sovereign immunity does not apply. *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005); *see also Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986) (holding a plaintiff, prior to filing an action under the FTCA in federal court, must "first present[] the claim to the appropriate Federal agency," noting "[i]t is well-settled that the requirement of filing an administrative claim is jurisdictional and may not be waived.").

This Court finds Plaintiff has not administratively presented his defamation claim against Representative Norman to the House, as documented by the Office of General Counsel, United States House of Representatives. *See* ECF No. 49-3 at 1. Based on the record at this time, the Court finds that Plaintiff has failed to exhaust his administrative remedies.

Even if the Court had subject matter jurisdiction over Price's claim, this Court finds dismissal is still warranted because his claim arises out of torts precluded by the FTCA—specifically, defamation. That issue warrants discussion here.

The FTCA excludes from the waiver of sovereign immunity specific types of tort claims. Those claims generally are intentional torts and claims "arising out of" those torts. *See* 28 U.S.C. § 2680(h). Included on that list of torts for which the federal

14

government has not waived its sovereign immunity are the defamation torts. *Id*. In determining whether a claim is excluded, courts determine the nature and extent of tort liability by applying the law of the state in which the cause of action arose.

If a claim against the United States falls within an exception to the FTCA, the cause of action would be properly dismissed for lack of subject matter jurisdiction. *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 967 (4th Cir. 1992) ("The subject matter jurisdiction of the federal courts is defined by any conditions the United States attaches to its waiver of immunity."). The Fourth Circuit has consistently applied the libel and slander exception of the FTCA to bar claims that "arise out of" claims for defamation, even though a cause of action for defamation is not specifically alleged in the Complaint. In *Talbert v. United States*, the Fourth Circuit affirmed a district court in holding that, "artful pleading cannot alter the fact that his claim 'resound[s] in the heartland of the tort of defamation: the injury is to reputation; the conduct is the communication of an idea, either implicitly or explicitly.'" *Talbert v. United States*, 932 F.2d 1064, 1067 (4th Cir. 1991). The Court in *Talbert* concluded the plaintiff's claim was barred under § 2680(h) of the FTCA because the gist of the plaintiff's complaint was that the Department of Commerce was disseminating false information about plaintiff, rather than acting negligently in maintaining plaintiff's personnel records, as plaintiff alleged. *Id*. at 1066.

This District Court recently dismissed a case involving defamation claims levied against a member of the United States Senate. *Order Granting Motion to Dismiss*, *Quinn v. United States*, No. 0:21-cv-02950 (D.S.C. March 29, 2022), ECF No.

11. In that case, a professional bass fisherman alleged state law tort claims of invasion of privacy and negligence against U.S. Senator Bernie Sanders for using his image in a policy video shared on Sanders' social media pages entitled "5 Reasons the Border Wall Won't Stop Drugs." *Id.* at 1. Plaintiff alleged that Senator Sanders did not obtain his permission to use his likeness or identity in the video and that Senator Sanders knew or should have known that these assertions were false and harmful to Plaintiff, specifically stating that the suit was to "vindicate an egregious, false association created by the video" which falsely implied he was "associated in criminal activities." *Id.* at 1-2. The Court determined Plaintiff was barred from proceeding with his lawsuit based on § 2680 of the FTCA because (i) the discretionary function exception to sovereign immunity applied, and (ii) the claim asserted was a defamation claim which precludes liability in § 2680(h) of the FTCA. Therefore, Plaintiff's claims were outside the FTCA's limited waiver of immunity, thus the Court lacked subject matter jurisdiction.

Here, Plaintiff has expressly pled the intentional tort of defamation, a named exception to the FTCA's limited waiver of sovereign immunity. It is the Government's position that Plaintiff's FTCA claim should be dismissed because of the FTCA's limited waiver of sovereign immunity is subject to numerous exceptions, as discussed above. The Court agrees. As noted by the Magistrate Judge in the Report, Plaintiff does not directly address this argument in neither his briefing nor his objections. *See* ECF No. 54 at 11. Therefore, because Price's claim arises out of allegedly defamatory acts, his claim is barred under § 2680 of the FTCA.

16

## IV. Conclusion

In light of the standard set forth in Wallace, the Court has reviewed, de novo, the Report, the objections, and the reply briefs. In summary, after careful review of the Report and the objections, and for the reasons stated by the Magistrate Judge, the Report, ECF No. 54 is **ACCEPTED**, and the Objections to the Report, ECF No. 55, are **OVERRULED**. The United States' motion to substitute, ECF No. 49, is **GRANTED**. Furthermore, Defendant's Motion to Dismiss, ECF. No. 49 is **GRANTED**, dismissing Plaintiff's FTCA claim without prejudice.

**IT IS SO ORDERED.**

_s/Terry L. Wooten_
Senior United States District Judge

October 17, 2022
Columbia, South Carolina